THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* LUIS
VALENTÍN ACEVEDO, Defendant and Appellant.

No. CR-68-142.     Decided May 8, 1969.

*José Veray, Jr.,* for appellant. *Rafael A. Rivera Cruz, Solicitor
General, Peter Ortiz, Acting Deputy Solicitor General,* and
*Lydia Nieves Franqui, Assistant Solicitor General,* for The
People.

PER CURIAM: Appellant, having been convicted by a jury of two charges of assault with intent to commit murder, and of driving a vehicle under the influence of intoxicating liquor and without a license (§ 218 of the Penal Code and §§ 5–801 and 3–301 of the Vehicle and Traffic Law—33 L.P.R.A. § 732; 9 L.P.R.A. §§ 1041 and 721), was sentenced to serve from 10 to 15 years in the penitentiary on each one of the felonies and to imprisonment in jail for the offense of driving under the influence of intoxicating liquor, because of the aggravating circumstances of a subsequent offense. Since December 1965 his driver's license had been suspended.

Appellant assigns as errors that:

(1) The verdicts returned by the jury are contrary to the evidence introduced.

(2) There was not sufficient evidence to support that appellant was guilty of driving a motor vehicle in a state of intoxication.

(3) The penalties of imprisonment were excessive, since there was no evidence of aggravating circumstances and

(4) It was an error to deny the motion for a new trial in the three causes appealed from.

The testimony of the eyewitnesses showed that during the night and until the time at which the facts occurred appellant passed some four times along the road in front of the store of Mislael Matías Pérez, in the ward Borinquen of Aguadilla, driving a Chevrolet vehicle; every time he went by he stopped and uttered insults and obscene words, from the car or after alighting from the same. On one of these occasions he began to urinate in front of the store where Mislael Matías Pérez, his wife, his parents, and two brothers were tidying up and closing the business at that moment. While he urinated he continued uttering insults and obscene words challenging someone to interrupt him from urinating or to kill him. While Mislael, his wife, Víctor Manuel Matías Pérez, and next to

him his mother and on the other side his father, and his brother Vidal were outside the doors of the establishment, appellant, who at that moment had stopped at about 120 feet from the store, suddenly began to move the vehicle in reverse with great speed towards the place where said persons were. Appellant himself testified that when he was going in reverse he was looking backwards. Said persons did not move because "we never thought that he would run the car over us." Too late, when he realized it, Vidal pushed his brother and his parents to avoid being run over but he could not escape. As a result of being trapped by the vehicle against the wall of the store, he suffered serious injuries for which he was hospitalized for several months, including the fracture of the pelvis, perforation of the bladder and the urethra, with big internal hemorrhage and paralysis of a foot due to an injury of the principal nerve of the leg. He suffers from a difficulty in urinating and a deformity of the hip.

The witness Marta Rivera, Mislael's wife, testified that appellant "Seemed drunk from the way he talked and from the manner he was driving the car. . . . Because of the words he talked. . . . He was talking dirty and you could tell that he was drunk. . . . He went by in the car from one side to the other zig-zagging along the road. . . . He swerved from where he was, instead of going straight, he swerved from the right." The injured, Víctor Manuel Matías Pérez, testified that they disregarded the offenses which appellant was uttering because "We already knew him. He used to do that"; that appellant was driving the vehicle "zig-zagging and fast"; that he was drunk "In the manner of driving and talking"; that he talked "As though he was drunk . . ."; that he noticed that "He was dirty and that" in his talk. Vidal Matías Pérez testified that appellant uttered his insults to him; that he did not do anything "Because I knew him, he was drunk" referring to appellant, due to "The way in which he was talking. . . .

Vulgarly, dirty words. Calling us sons of a b .... Afterwards he got out of the car and he began to urinate" in the presence of ladies, and to challenge the people; that he was driving erratically. Even though he could escape from being run over by appellant's vehicle one of his hands was injured when appellant's vehicle hit the wall of the store at the same time his brother Víctor was being trapped and injured.

When he saw that Víctor was wounded, Mislael went into the business, took a revolver to shoot at appellant but his wife deflected the weapon and one of the shots wounded his father. As soon as the collision occurred appellant ran away but some people beat him and took away his shirt.

Appellant testified that the night of the events he went to visit a man who lived near the business owned by Mislael Matías in relation to a business matter. He parked his automobile in front of Mislael's store. Upon coming back "I could not move my car away . . . then I had to move backwards a little . . . and I hit a boy of 14 or 20 years." Even though he was looking backwards he did not see him. He tried to get out of the car and everybody beat him, destroying his clothes. He was hospitalized for twenty-five days. He denied that he had stopped to urinate. To questions made by the prosecuting attorney he testified that he did not go to the authorities to file a complaint on account of the injuries received; that at that time he did not have a driver's license because it had been cancelled when he was found guilty of an offense of driving in a state of intoxication, in subsequent degree.

Several photographs of the scene of events and of appellant's vehicle were admitted, showing that as a result of the collision against the wall of the store in question the vehicle had suffered dents on the left side over the rear bumper plus the breaking of the little light on the far left of the four with which the vehicle is equipped over said bumper.

The trial court charged the jury, without objection or request of special instructions from any of the parties, "within this classification of the offense of assault with intent to commit murder a verdict of assault with intent to commit manslaughter would lie . . . also a verdict . . . for the offense of assault and battery, provided that the evidence justifies it." Elaborate and correct instructions were given as to each one of these offenses, as to malice aforethought in relation to the offense of attack to commit murder, and the circumstances under which the jury could consider appellant guilty of each of said offenses and of its duty to acquit him if there existed reasonable doubt as to his guilt.

Appellant argues that the deliberate intent to kill does not appear from the evidence nor was it established that appellant was driving under the influence of intoxicating liquor, that assuming that he was intoxicated he could not conceive in his mind the intent to kill; that the evidence would have rather justified a verdict of assault and battery (aggravated or simple) ; that it rather tended to charge appellant with a violation of § 5-201 and of § 5-505 of the Vehicle and Traffic Law. He indicates that the penalties are excessive and for those reasons the trial court erred in denying the motion for a new trial. We do not agree.

■ We said in *People* v. *Méndez*, 74 P.R.R. 853 (1953) that

"The concept of malice aforethought implies the absence of just cause or excuse in taking life and implies in addition the existence of the intent to kill a fellow creature. That intent may be manifested through one of the two following elements, either of which is sufficient to determine the existence of malice aforethought, to wit, (*a*) the specific intent to kill, considered as equivalent to the desire and direct, explicit, and defined purpose to kill, that is, formulated precisely with the direct objective to kill [citation], or, (*b*) the intention to do an act or inflict great bodily injury whose probable consequence is the death of a person."

■ With respect to appellant's state of intoxication and whether the same rendered him incapable of "conceiving in his mind the intent to kill" pursuant to the provisions of § 41 of the Penal Code—33 L.P.R.A. § 87, there arises the question not alleged by appellant, whether there was sufficient evidence of intoxication which would require an instruction pursuant to the provisions of § 41 *supra*, as we ruled in *People* v. *Delgado Lafuente, ante,* p. 260; in *People* v. *Sánchez Vega, ante,* p. 129, and in *People* v. *Tufiño Cruz,* 96 P.R.R. 219 (1968). We do not think so. Although the prosecuting attorney's evidence justified the conclusion of the trial court that appellant was driving the vehicle in a state of intoxication, the same was not sufficient, as it was not in *Delgado Lafuente, supra,* to justify that he was in the state of intoxication contemplated in the aforesaid § 41 of the Penal Code, particularly when appellant himself testified as to the facts which gave rise to the prosecution against him and explained how he happened to make his car go backwards and how he trapped "a boy 14 or 20 years old," showing thus that he could not have been in the state of intoxication which would justify the jury in concluding that it has rendered him incapable of forming or conceiving the indispensable intent or malice of the offense charged against him and that therefore would require the corresponding instruction.

■ Under the circumstances of the case we are not justified in disturbing the discretion of the trial court in fixing the term of the penalties and in denying the granting of a new trial.

Therefore, the judgments rendered in this case by the Superior Court, Aguadilla Part, on November 24, 1967 will be affirmed.

Mr. Justice Hernández Matos and Mr. Justice Santana Becerra did not participate herein. Mr. Justice Dávila concurs in the result.